

**FILED**
**Jan 31, 2022**
**11:46 AM(ET)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT CHATTANOOGA

| | | |
|---|---|---|
| **Raphaela Hodge,** | ) | **Docket No. 2019-01-0499** |
| **Employee,** | ) | |
| **v.** | ) | |
| **Amazon.com,** | ) | **State File No. 25060-2019** |
| **Employer,** | ) | |
| **And** | ) | |
| **American Zurich Insurance Co.,** | ) | **Judge Audrey A. Headrick** |
| **Carrier.** | ) | |

---

## COMPENSATION ORDER

---

The Court held a Compensation Hearing to determine whether Ms. Hodge is entitled to benefits for her left-shoulder injury. Resolution of this issue rests on credibility. For the reasons below, the Court holds she is not entitled to benefits.

### History of Claim

The crux of this case is whether Ms. Hodge became injured when she tripped and fell over a dog kennel at home and sought emergency treatment for her left shoulder, or whether the injury resulted from lifting a box at work for Amazon.

At the hearing, Ms. Hodge testified about the emergency treatment from the March 13, 2019 fall at home. She denied complaining about left-shoulder pain, claiming she reported neck stiffness. However, the intake form noted "left shoulder and left knee pain . . . [with] increasing shoulder pain and decreased ROM." Likewise, Ms. Hodge admitted in her Admission responses that she "complained of pain in . . . left shoulder." The record was silent about any neck complaints. The provider diagnosed left-shoulder and knee contusions/strains, prescribed an anti-inflammatory medication, and recommended follow up with an orthopedist as needed.

Regarding the work incident, which took place three days after she fell at home, Ms. Hodge stated she heard a pop in her left shoulder while lifting a heavy box. She went to

1

the onsite medical clinic, reported the injury, and received authorized treatment from Dr. Natasha Ballard. Dr. Ballard's record reflects Ms. Hodge "denie[d] previous shoulder injury," reporting left-shoulder pain and reduced range of motion.

Amazon offered Ms. Hodge a panel, and she selected Dr. Benjamin Miller, an orthopedic surgeon. She reported lifting a box at work and hearing a pop but did not disclose the emergency treatment. Dr. Miller diagnosed a rotator cuff tear and recommended surgery. At that point, Amazon did not approve the surgery and denied the claim "due to her having been seen 3 days prior at Erlanger for shoulder pain."

Ms. Hodge testified Amazon learned of her fall at home and emergency treatment from her co-worker/friend, Ms. Murphy. She acknowledged she told Ms. Murphy that she fell at home, but she denied telling Ms. Murphy that she went to the emergency room or which body part she injured in the fall. However, in her response to admissions, Ms. Hodge admitted she told "a co-worker that [she] fell at home and hurt [her] shoulder." When confronted with her admission at trial, Ms. Hodge responded it was wrong.

For her part, Ms. Murphy testified Ms. Hodge stated she fell at home over a dog kennel, landing on her face and arm. Ms. Murphy stated Ms. Hodge admitted she was "claiming a work injury from that fall." Ms. Murphy provided a handwritten statement to Amazon in May but acknowledged she mistakenly wrote the conversation occurred two months before instead of two weeks. She explained she delayed reporting the conversation to Amazon due to their friendship and to avoid work drama.[1]

Despite learning about Ms. Hodge's fall at home, Dr. Miller determined causation based on her reported history of hearing a pop when lifting at work. At his first deposition, Dr. Miller repeatedly identified "the pop" as the basis for concluding the lifting incident caused her rotator cuff tear. He agreed he based his causation opinion on what she told him.

At his second deposition, Dr. Miller's causation opinion remained consistent. He stated the alleged lifting incident "[was] likely the main contributing cause greater than 51 percent of her left shoulder injury (torn rotator cuff) and need for surgical intervention." Dr. Miller ultimately performed two left-shoulder surgeries.[2]

Dr. Miller also testified about his reliance on Ms. Hodge's credibility. He reiterated he based his causation opinion on what she told him. As to calculating Ms. Hodge's

---

[1] Drama did ensue. In an Amazon Facebook group chat, Ms. Hodge called Ms. Murphy a "snitch" and "[expletive]," telling her she would "be sorry later."

[2] During his deposition, Dr. Miller also addressed Ms. Hodge's 2021 right-shoulder rotator cuff tear. He stated she did not report an injury or pop and agreed it "can be" consistent with an overuse type injury.

impairment, he stated he used a Grade Two modifier because she was tender to touch. However, Dr. Miller noted it is "fairly unnormal" for a patient to remain tender around the rotator cuff a year after surgery. He acknowledged his impairment assessment was somewhat dependent on Ms. Hodge's complaints. Further, Dr. Miller found it "a little odd" that Ms. Hodge did not disclose her emergency treatment during her first visit.

Dr. Miller placed Ms. Hodge at maximum medical improvement on April 21, 2021, and assigned an impairment rating of four percent and permanent restrictions. However, the functional capacity evaluation therapist concluded Ms. Hodge provided an unreliable effort and recommended no restrictions. Dr. Miller considered his restrictions appropriate based on "just examining the patient."

Dr. Robert Mastey, a board-certified orthopedic surgeon who practices in the same group as Dr. Miller, performed an employer's examination for Amazon, which included a record review and an in-person evaluation.

During his exam, Dr. Mastey found Ms. Hodge's responses troublesome. He asked her three different times if she could recall ever having a problem with her shoulder before the work incident, and Ms. Hodge responded "no" each time. Her responses to self-care activities suggested she would not be able to perform basic self-care. By contrast, her responses to another questionnaire stated the only task she was unable to do was comb her hair.

Likewise, Dr. Mastey found irregularities during his physical examination. He noted Ms. Hodge exhibited "a very pronounced and exaggerated pain response with left shoulder motion." With Dr. Miller, Ms. Hodge demonstrated 150 degrees of forward flexion but only 90 degrees with Dr. Mastey. Further, Dr. Mastey was unable to perform strength testing, an O'Brien's test, and a Speed test due to Ms. Hodge's pain response, which he described as "[a]lmost in the exaggerative level."

Dr. Mastey also found a contradiction in Ms. Hodge's functional capacity evaluation. He noted on page twenty-two of the report, "it shows her [in a photograph] raise her arm, her left arm 135 degrees." However, Dr. Mastey explained the same page also shows "she's only able to move her arm 82 degrees on the testing."

Dr. Mastey disagreed with Dr. Miller regarding causation and impairment. In his office note, Dr. Mastey wrote that, based on the many inconsistencies, it was "very unlikely (<51%) that the LEFT rotator cuff tear [was] due to the purported on-the-job injury 3/16/2021." During his deposition, he reiterated he was unable to find that the work incident caused Ms. Hodge's rotator cuff tear due to the discrepancies. Likewise, when calculating her impairment rating, Dr. Mastey assigned a two-percent impairment by using the Grade C default due to the conflicting information.

3

**Findings of Fact and Conclusions of Law**

Ms. Hodge, as the employee in a workers' compensation claim, has the burden of proof on all essential elements of her claim. *Scott v. Integrity Staffing Solutions,* 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). At a Compensation Hearing, Ms. Hodge must prove by a preponderance of the evidence that she is entitled to benefits. Tenn. Code Ann. § 50-6-239(c)(6) (2021).

Under Workers' Compensation Law, Ms. Hodge must prove she suffered an injury caused by a specific incident or set of incidents arising "primarily out of and in the course and scope of employment," which means the employment contributed more than fifty percent in causing the injury, considering all causes. Tenn. Code Ann. § 50-6-102(14)(A)-(B).

Amazon relied on Dr. Mastey's opinion to support its denial. However, since Ms. Hodge chose Dr. Miller from a panel, his opinion is presumed correct subject to rebuttal by a preponderance of the evidence. Tenn. Code Ann. § 50-6-102(14)(E). The Court must determine if Amazon rebutted the presumption of correctness attached to Dr. Miller's opinion. After reviewing the evidence, the Court holds it did.

In evaluating conflicting expert testimony, the court may consider, among other things, "the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information through other experts." *Brees v. Escape Day Spa & Salon,* 2015 TN Wrk. Comp. App. Bd. LEXIS 5, at *14 (Mar. 12, 2015).

Drs. Miller and Mastey offered opposing causation opinions. Both physicians are qualified, but Dr. Mastey is board-certified. This factor favors Dr. Mastey. As to the circumstances of their examination, Dr. Mastey saw Ms. Hodge once, while Dr. Miller saw her for ongoing treatment. This factor favors Dr. Miller. What sets these two experts apart is that Dr. Mastey did not turn a blind eye to the many inconsistencies, while Dr. Miller did.

The list of discrepancies is long. Ms. Hodge never disclosed her emergency treatment or fall at home to Dr. Mastey and delayed reporting it to Dr. Miller. She only reached 90 degrees forward flexion during Dr. Mastey's examination but reached 150 degrees during Dr. Miller's. A photograph from the functional capacity evaluation of Ms. Hodge showed her reaching at 135 degrees but testing at only 82 degrees. The therapist concluded Ms. Hodge provided an unreliable effort. Dr. Miller acknowledged it is "fairly unnormal" for a patient to remain tender around the rotator cuff a year after surgery. Considering the information available to them and the importance of that information to other experts, this factor favors Dr. Mastey.

For these reasons, the Court finds that Dr. Mastey's opinion overcame the presumption of correctness afforded to Dr. Miller's opinion.

Additionally, Ms. Hodge's credibility is tied to her claim that she injured her shoulder while lifting at work. Amazon impeached her testimony, and Ms. Hodge failed to offer any plausible explanation for the many discrepancies. Ms. Hodge stated she never told Ms. Murphy which body part she injured in the fall. In her response to admissions, she admitted telling "a co-worker that [she] fell at home and hurt [her] shoulder." The Court is not reassured by Ms. Hodge's response that her admission response was wrong.

Similarly, Ms. Hodge insisted she did not complain about left-shoulder pain when receiving emergency treatment. However, the medical record and her admission response state that she "complained of pain in . . . left shoulder." The discrepancies in Ms. Hodge's own testimony bolstered Ms. Murphy's version of events: that Ms. Hodge was "claiming a work injury from that fall." Given the witness testimony, the medical records, and the expert opinions, the Court does not find Ms. Hodge credible.

Therefore, the Court holds Ms. Hodge did not prove by a preponderance of the evidence that she is entitled to the requested benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Hodge's claim is denied.

2. Amazon shall pay the $150.00 filing fee to the Clerk within five business days after this order becomes final.

3. Amazon shall file an SD-2 with the Clerk within ten business days of this order becoming final.

4. Unless appealed, this order shall become final in thirty days.

   **IT IS ORDERED.**

   **ENTERED January 31, 2022.**


*Audrey Headrick*
_____
**Judge Audrey A. Headrick**
**Court of Workers' Compensation Claims**

5

## APPENDIX

Exhibits:
1. Deposition of Dr. Miller, June 22, 2020
2. Deposition of Dr. Miller, December 17, 2021
3. Erlanger Hospital records
4. AFC Urgent Care records
5. Employee's Responses to Employer's Requests for Admission
6. Transcript of Expedited Hearing, pages 83-84

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice, October 3, 2019
3. Notice of Appearance
4. Request for Expedited Hearing
5. Expedited Hearing Order
6. Agreed Order of Substitution
7. Motion to Revise Scheduling Order
8. Amended Scheduling Order
9. Dispute Certification Notice, December 22, 2021
10. Pre-Compensation Hearing Statement
11. Employer's Witness and Exhibit List
12. Employer's Brief
13. Agreed Order for Attendance of Harley Charles and Braynemost Escalona by Video
14. Notice of Amended Filing of Employee's Pre-Trial Memorandum
15. Amended Employee's Pre-Trial Memorandum

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on January 31, 2022.

| Name | Certified Mail | Email | Service sent to: |
|---|---|---|---|
| Brent Burks,<br>Lew Belvin,<br>Katie Reed,<br>Employee's Attorneys | | X<br>X<br>X | brentburks@mcmahanlawfirm.com<br>lew.belvin@mcmahanlawfirm.com<br>katiereed@mcmahanlawfirm.com |
| W. Troy Hart,<br>Tiffany B. Sherrill,<br>Employer's Attorneys | | X<br>X | wth@mijs.com<br>tbsherrill@mijs.com |

/s/Penny Shrum        w/permission JD
_____
**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov